## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUSAN CHESTNA,<br><br>       Plaintiff,<br><br>       V.<br><br>PRUDENTIAL INSURANCE COMPANY OF AMERICA and STATE STREET BANK AND TRUST COMPANY LONG TERM DISABILITY PLAN,<br>       Defendants. | CIVIL ACTION NO. |

## **COMPLAINT**

## **Introduction**

This is a claim arising under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover long term disability benefits despite ample evidence in support of plaintiff's claim. Plaintiff is totally disabled from gainful employment due to various neurological medical conditions. Prudential Insurance Company of America had paid benefits to Susan Chestna for years and then terminated her claim on unlawful grounds.

## Parties

1.   Plaintiff Susan Chestna ("Ms. Chestna") is an individual having a usual place of residence at Middleborough, Plymouth County, Massachusetts.

2.   Defendant Prudential Insurance Company of America ("Prudential") an insurance company existing under the laws of the State of New Jersey, having a place of business at 213 Washington Street, Newark, New Jersey, and doing business in the Commonwealth of Massachusetts as an authorized foreign insurer, and insures and administers claims for the State Street Bank and Trust Company Long Term Disability Plan.

3.   State Street Bank and Trust Company Long Term Disability Plan ("Plan") is an employee benefits plan established for the benefit of employees of State Street Bank and Trust Company ("State Street") having a principal place of business at One Lincoln Street, Suffolk County, Boston, Massachusetts.

## Jurisdiction and Venue

4.    This Court has original jurisdiction for claims for benefits arising

under 29 U.S.C. § 1132.

5.    Venue is proper before this Court, because Prudential is engaged in

the business of insurance in this Commonwealth and the Plan

provides coverage for the Plaintiff in this Commonwealth.

## Facts Common to All Counts

6.    At all times relevant hereto, Ms. Chestna was a beneficiary and

participant under the Plan provided by State Street that is fully

insured and administered by Prudential.

7.    The Plan is an "employee welfare benefit plan," as defined by

ERISA, 29 U.S.C. § 1002(1), and may be sued under ERISA as an

entity, pursuant to 29 U.S.C. § 1132(d)(1).

8.    Prudential is liable for payment of benefits under the Plan.

9.    Ms. Chestna is a "participant" in the Plan, as defined by ERISA, 29

U.S.C. § 1002(7).

10.    As a participant in the Plan, Ms. Chestna was eligible to receive,

and did receive other collateral welfare-benefits provided by State

Street, including but not limited to healthcare insurance coverage.

11.    At all times material hereto, and since the date that Ms. Chestna

first sought Plan benefits, she has been totally disabled as defined

under the terms of the Plan.

12.    The Plan defines disability

**How Does Prudential Define Disability?**
You are disabled when Prudential determines that:
• you are unable to perform the *material and substantial duties* of your *regular*
*occupation* due to your sickness or *injury;* and
• you have a 20% or more loss in your *indexed monthly earnings* due to that sickness or
injury.
After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience.

*Regular occupation* means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks arc performed for a specific employer or at a specific location.

*Gainful occupation* means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 50% of your indexed monthly earnings within 12 months of your return to work But, if you enrolled for Option 2, it means an occupation including self employment, that is or can be expected to provide you with an income equal to at least 70%, of your indexed monthly earnings within 12 months of your return to work

13.    On October 30, 2012, Ms. Chestna ceased working as a Business

Analyst for State Street due to symptoms caused left carotid

dissection.

14.   Ms. Chestna suffered from and continues to suffer from symptoms including chronic fatigue, chronic headaches, nerve pain in the neck and face, tremors, gait instability balance dysfunction, eye twitching, double vision, shoulder instability and memory impairment.

15.   Ms. Chestna has medically documented by MRI study with mild-to-moderate multilevel facet degenerative changes and minimal disc degenerative changes.

16.   Ms. Chestna's impairing symptoms are documented by her medical records of her treating physicians, a Functional Capacity Evaluation, neuropsychological testing, MRI, CT Scans and corroborating sworn statements.

17.   Initially Prudential denied Ms. Chestna's application for benefits under the full term of the State Street Bank and Trust Company Short Term Disability Plan and completely under the Plan.

18.   Ms. Chestna appealed.

19.   The Plan and Prudential paid benefits for years.

20.     An internal claim note by a Prudential vocational examiner

        conceded that Ms. Chestna could not work in her occupation or a

        similar occupation.

    The claimant's job description is consistent with Management Analyst
    DOT Code 161.167-010 requiring physical demands in the sedentary
    range as indicated above. The job requires travel, meeting with clients
    and presenting information or recommendations….Most Management
    Analysts work full time and 1/3 work over 40 hours per
    week….Physical demands of Management Analyst appear to exceed
    the claimant's capacity as indicated…Since the claimant is precluded
    form performing her regular occupation she meets the def of dis and it
    is appropriate to overturn term/denial.

21.     Prudential terminated benefits again under the Plan.

22.     Ms. Chestna filed additional mandatory appeals to Prudential.

23.     Prudential required Ms. Chestna to attend a medical examination

        on January 31, 2017 by Paul S. Blachman, M.D. of South

        Weymouth, Massachusetts.

24.     Based on a deposition taken on August 10, 2010, Dr. Blachman is

        not a neutral examiner but an advocate. A copy of a deposition is

        attached as EXHIBIT A.

25.     Dr. Blachman's conduct during the examination and after the

        examination in letters to Prudential asserting baseless allegations

        against Ms. Chestna and her counsel are indicative of a biased

        claims examiner rather than a neutral scientist.

26.     Had Prudential acknowledged that Dr. Blachman was biased, it could have sent Ms. Chestna for another medical examiner, one who did not have an obvious agenda to discredit Ms. Chestna.

27.     Prudential had an obligation as part of Full and Fair Review under ERISA to select an unbiased medical examiner.

28.     On February 6, 2017 Dr. Blachman issued a report alleging that nothing was wrong with Ms. Chestna and that her symptoms were of psychogenic origin only and that Ms. Chestna was alleging symptoms for "secondary gain."

29.     Dr. Blachman not only accused Ms. Chestna of secondary gain but her legal counsel too in letters authored by Dr. Blachman.

30.     Secondary gain is a psychological term loosely defined whereby the patient asserts she is ill to secure advantages, such as financial gain.

31.     Ms. Chestna is not feigning illnesses for secondary gain.

32.     Dr. Blachman never explained why most treating physicians were wrong in their determinations and observations and Dr. Blachman was correct in his analysis.

33.     Ms. Chestna was accompanied to the examination by her sister-in-law who took notes.

34.     Ms. Chestna' s sister-in-law observed that Dr. Blachman was rude, abusive and did not act as a disinterested examiner.

35.     On March 1, 2017 Dr. Blachman wrote to Prudential and in part

        stated

The following is my response to the allegations and complaints
documented in the letter from Susan Chestna' s attorney, dated
February 3, 2017. The letter states that I was "rude and abusive"
while taking a history and acted "unlike any other physician that she
had ever been examined by in her life".

I reviewed the detailed report from the note taker who accompanied
Ms. Chestna to the examination. I found the statement that I was
"rude and abusive," offensive and entirely untrue. It should be
noted that prior to the examination, I had been asked to give
permission for the presence of a note taker during the examination.
I replied that I had no problem with that. However, it turned out
that the note taker was not a disinterested person, but rather Ms.,
Chestna's sister-in-law. A copy of his letter is attached as EXHIBIT B.


36.     After reviewing additional medical records gathered in July and

        August 2017 and submitted to Prudential, Dr. Blachman continued

        to advocate to Prudential that Ms. Chestna had no physical

        abnormalities.

37.     Dr. Blachman determined it was appropriate to offer a psychological

        opinion regarding her legal counsel. Dr. Blachman wrote in part

I feel that the multiple appeals by the examinee's attorney, Mr.
Feigenbaum, are self serving and a manifestation of secondary
gain on his part. I feel it is apparent that Ms. Chestna is
suffering from a severe functional illness, which rendering her
disabled. Despite multiple evaluations by multiple neurologists,
no physical basis for her symptoms has been documented.
I feel the multiple appeals by Mr. Feigenbaum do not serve the
examinee's interest….and that the further appeals simply
provide secondary gain for Mr. Feigenbaum as opposed to any
benefit of the examinee.

38.   Ms. Chestna has exhausted all required appeals under the Plan prior to filing this action.

39.   Prudential issued a final denial in a letter dated October 3, 2017.

40.   Prudential has not been granted authority to make discretionary benefit decisions by either the ERISA Plan Sponsor or ERISA Plan Administrator. To the extent that Prudential contends that it has been granted authority to make discretionary benefit decisions, that authority was self-granted by Prudential alone and is not valid under 29 U.S.C. §1105( c).

**PRUDENTIAL IS A CONFLICTED FIDUCIARY.**

41.   Prudential instructs claims personnel in its training documents that the most important goal is: "Increase Profitability. This goal will be paramount important as we need to improve our profits and return on equity." A copy of this statement is attached as EXHIBIT C.

42.   Prudential instructs claims personnel in its training documents that, "Disability is the failure to adapt." A copy of this statement is attached as EXHIBIT D.

43.   Prudential instructs claims personnel in its training documents that Prudential is a claims management company and the goal is to address beneficiaries of Prudential's insurance payments who have "adaptive problems." A copy of this statement is attached as EXHIBIT D

44.     Prudential permits claims personnel deciding claims to have access

to financial reserve information. A copy of a claims screen is

attached as EXHIBIT E.

45.     Prudential classifies claims by "Flight Path" or "segments" 1, 2, 3 or

4 which ordains the outcome of a claim.

46.     In a letter by Prudential dated August 2, 2017, Prudential states,

A review of the file indicated Ms. Chestna 's claim was
designated a Flight 4 Path. A Flight 4 path indicated a claim
with uncertain/complex medical segment. Such may require
clarity regarding the impact of conditions on functioning. Such
may also require more intensive review to assess functional
capacity and contractual eligibility to assess functional capacity
and contractual eligibility.

47.     Prudential classified Ms. Chestna' s claim under Flight Path 4,

making it difficult, if not impossible to receive on-going benefits.

48.     Prudential's goal of profit making perpetually conflicts it with its

obligation as an ERISA fiduciary to decide claims, such as Ms.

Chestna's, based on individual medical conditions and impairment.

49.     It is well known that Prudential provides supplemental

compensation to its claims personnel through bonus and incentive

plans.   A copy of payments disclosed on PACER in unprotected

documents is found on the attached EHXIBIT F.

50.     In reviewing Ms. Chestna' s appeal, Prudential secured file

reviewing consultants, such as Michael R. Villanueva, Ph.D., of

Medford, Oregon who regularly is retained by insurance companies.

51.    Prudential relied on Dr. Blachman who is biased as explained above.


## Count I

## Benefits Due From Prudential and the

## Plan under ERISA, 29 U.S.C. § 1132

52.    Ms. Chestna realleges all paragraphs set-forth above and

incorporates the same by reference as if fully set forth herein again.

53.    This Court must conduct a plenary proceeding in evaluating

Prudential's decision to terminate benefits.

54.    The decision to terminate Plan benefits was not supported by

substantial evidence, was not reasonable based on the evidence, was

wrongful and not in compliance with applicable laws.

55.    As a result of Prudential's refusal and its failure to pay to Ms.

Chestna disability benefits provided to her and to those participants

who are disabled, Ms. Chestna is entitled to relief against

Prudential to recover benefits due to her under the terms of the

Plan and to enforce her rights to benefits under the Plan and to

clarify her rights to future benefits under the Plan pursuant to 29

U.S.C. § 1132 (a), and to secure reinstatement of collateral

employee-welfare benefits provided to individuals deemed qualified

for disability benefits under the Plan.

56.     Ms. Chestna is entitled to reinstatement of all other benefits, rights

and privileges as a result of being disabled under the Plan.


## Count II

## Award of Attorneys' Fees and Costs

57.      Ms. Chestna realleges all paragraphs set-forth above and

incorporates the same by reference as if fully set forth herein again.

58.      Prudential and the Plan have unlawfully terminated benefits and

have caused Ms. Chestna to incur attorneys' fees and costs and will

cause her to incur additional fees and costs.

59.     Ms. Chestna is entitled to recover under 29 U.S.C. § 1132 (g)(1),

costs of this litigation, including reasonable attorneys' fees and

interest at the Massachusetts statutory on all back due benefits.

WHEREFORE, plaintiff Susan Chestna demands relief and judgment against Defendants, jointly and severally, as follows:

1.  Equitable relief declaring the rights and duties of the Plaintiff and Defendants with respect to past benefits, including collateral benefits, owed to the Plaintiff, and future benefits, including collateral benefits, to be paid to the Plaintiff, under the Plan.

2.  In the alternative, entering an order of remand, requiring both defendants to afford Full and Fair Review Under ERISA.

3.  Awarding attorney's fees, costs and interest under 29 U.S.C. § 1132 (g)(1)

4.  For such other legal or equitable relief as this Court deems just and proper.

SUSAN CHESTNA


*/s/ Jonathan M. Feigenbaum*
_____
Jonathan M. Feigenbaum, Esq.
BBO # 546686
184 High Street, Suite 503
Boston, MA 02110
Tel. No.: (617) 357-9700
jonathan@erisaattorneys.com